```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  9/14/2022
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UCC ASSET MANAGEMENT CORP. and
DEAN LANDIS,

                Plaintiffs,

-against-

GLOBAL MERCHANT BOND SERIES,
INC.,

                Defendant.

20-cv-3484 (MKV)

OPINION & ORDER
GRANTING PLAINTIFFS'
MOTION AND
DENYING DEFENDANT'S
MOTION FOR
SUMMARY JUDGMENT

MARY KAY VYSKOCIL, United States District Judge:

      This dispute could appear on a first-year law school exam. Two parties entered into a contract. One party proposed a modification to the original contract, and the other party responded with a counteroffer, which was never accepted. What result? The original contract remains enforceable, as it was originally written, without any modifications. For the reasons set forth below, Plaintiffs' motion for summary judgment [ECF No. 55] is GRANTED, and Defendant's motion for summary judgment [ECF No. 53] is DENIED.

## I.    BACKGROUND

### A. Undisputed Facts

      Plaintiffs are UCC Asset Management Corp. and its principal Dean Landis. Defendant is Global Merchant Bond Series, Inc. ("Global"). Both sides agree that the facts below are undisputed. Indeed, the parties submitted a joint statement of undisputed material facts, pursuant to Local Civil Rule 56.1, along with copies of the contract, proposals, and email exchanges at issue in this case [ECF Nos. 52 ("Joint 56.1"), 52-1 ("2018 LOI"), 52-2 ("2019 LOI"), 52-3 ("Proposed Amendment"), 52-5 ("Modified Proposed Amendment"); 52-6].

Plaintiffs owned a company named Entrepreneur Growth Capital LLC ("EGC"). Joint 56.1 ¶¶ 1, 2, 4. By way of background, in January 2018, Global entered into a letter of intent agreement, the "2018 LOI," to govern the possible purchase of one hundred percent of the membership interest in EGC from Plaintiffs. Joint 56.1 ¶ 4. Although the transaction progressed to the point that final documents were drafted, the equity purchase contemplated by the 2018 LOI was never consummated because Global could not obtain "financer approval." Joint 56.1 ¶ 5. "The 2018 LOI expired or was otherwise abandoned." Joint 56.1 ¶ 6.

Global later approached Plaintiffs about purchasing seventy-five percent of their interest in EGC. Joint 56.1 ¶ 7. On September 20, 2019, Global "entered into a new letter of intent agreement" with Plaintiffs, the 2019 LOI agreement. Joint 56.1 ¶ 8; [ECF No. 52-2 ("2019 LOI") at 11]. The 2019 LOI agreement gave Global an exclusive right to purchase Plaintiffs' interest in EGC for a certain period of time. Joint 56.1 ¶ 9; *see* 2019 LOI § 8. Section 7 of the 2019 LOI agreement provides that Global must "use best efforts to complete" the purchase within sixty days after the September 20, 2019 signing of the 2019 LOI agreement—*i.e.*, November 20, 2019, although the parties may agree "in writing" to a different closing date. 2019 LOI § 7. Given that the 2018 deal had fallen through, the parties "specifically negotiated a $300,000 breakup fee to compensate [Plaintiffs] for the lost opportunities resulting from the exclusivity provided for in the 2019 LOI should Global decide to not go forward for 'any reason' other than two specifically-identified grounds (the 'Breakup Fee')." Joint 56.1 ¶ 10; *accord* 2019 LOI § 8 [ECF No. 54 ("Def. MSJ") at 2; ECF No. 56 ("Pl. MSJ") at 3].

Specifically, Section 8 of the 2019 LOI agreement provides that Global "shall pay" Plaintiffs the Breakup Fee if Global "elects not to complete the transaction for any reason other than (i) the results of its due diligence investigation," or (ii) because the parties "are unable to

agree to final terms materially similar to [the 2019 LOI agreement] in the Definitive Agreements" that would be drafted to consummate the purchase. 2019 LOI § 8; *see also* 2019 LOI § 5 (defining the "Definitive Agreements").

The 2019 LOI agreement also describes the process by which Global could elect to terminate the 2019 LOI based on the results of its due diligence investigation. *See* 2019 LOI § 3. Global had to provide "written notice" to Plaintiffs "prior to the expiry of the Investigation Period." 2019 LOI § 3. The Investigation Period is defined as the earlier of the Section 7 closing date or a prior termination of the LOI. 2019 LOI § 3. Both sides agree that "Global never communicated an election to terminate the 2019 LOI." Joint 56.1 ¶ 12.

The 2019 LOI agreement contemplates future negotiations over the final terms of the purchase, as well as possible amendments to the 2019 LOI agreement itself. It provides that the parties must "negotiate in good faith" to produce the "Definitive Agreements necessary to consummate the [purchase]." 2019 LOI § 5. The 2019 LOI agreement also mentions a process for executing "any amendment" to "[t]his agreement." 2019 LOI § 18. Crucially, Section 16 provides that the 2019 LOI agreement "shall not impose any binding obligations . . . *except* for Section[] 7," regarding the closing date, Section 8, regarding the Breakup Fee, and a number of other specified provisions. 2019 LOI § 16 (emphasis added).

In December 2019, Global identified issues with certain loans in EGC's portfolio [ECF No. 52-3]. Joint 56.1 ¶ 14. "The parties discussed those issues and reached agreement on how they were to be addressed." Joint 56.1 ¶ 15. "On January 6, 2020, Global emailed [Plaintiffs] with an attachment containing a proposed amendment modifying the 2019 LOI (the 'Proposed Amendment')." Joint 56.1 ¶ 16; Proposed Amendment [ECF No. 52-3]. The Proposed Amendment contained a new closing date of January 31, 2020, as well as language reflecting the

parties' agreement about the loans. *See* Proposed Amendment. Plaintiffs "responded by email stating: 'I am fine with the changes and have asked counsel to take a quick look.'" Joint 56.1 ¶ 17; [ECF No. 52-4 at 1]. "On January 7, 2020, [Plaintiffs] emailed Global that they accepted the proposed [sic] and sent an email with an attachment," but the attached document modified Global's Proposed Amendment. Joint 56.1 ¶ 18; Modified Proposed Amendment [ECF No. 52-5].

Both sides agree that Plaintiffs' Modified Proposed Amendment proposed two changes. Joint 56.1 ¶ 18. First, the parties agree that the Modified Proposed Amendment added only a "non-material clarification" to Global's "proposed language reflecting the parties' agreements concerning specific loans" in EGC's portfolio. Joint 56.1 ¶ 18; *see* Modified Proposed Amendment ¶ 4. Second, the Modified Proposed Amendment "inserted additional language regarding" the closing date and the Breakup Fee. Joint 56.1 ¶ 18.

Specifically, Plaintiffs' Modified Proposed Amendment would rewrite Section 8 of the original 2019 LOI agreement, regarding the Breakup Fee. As stated above, Section 8 of the 2019 LOI agreement provides that Global must pay the Breakup Fee if Global "elects" not to close for any reason other than: (i) Global elects to terminate the 2019 LOI based on the results of its due diligence investigation; or (ii) the parties cannot agree to "final terms" in the Definitive Agreements that are materially similar to the purchase terms in the 2019 LOI agreement. 2019 LOI § 8. By contrast, Plaintiffs' Modified Proposed Amendment would require Global to pay the Breakup Fee within ten days of the new (January 31, 2020) closing date if Global did not close for any reason other than the parties' inability to agree to "final terms" in the Definitive Agreements. Modified Proposed Amendment at 2.

Both sides agree that "Global did not return a signed copy" of the Modified Proposed Amendment. Joint 56.1 ¶ 19. Furthermore, both sides agree that "Global did not confirm its

acceptance or otherwise conduct itself in a manner consistent with acceptance" of the Modified Proposed Amendment. Joint 56.1 ¶ 23. In other words, there is no dispute that Global did not agree to the Modified Proposed Amendment.

On January 7, 2020, the same day Plaintiffs sent the Modified Proposed Amendment, Global sent Plaintiffs an email asking: "What happens to the breakup fee if we negotiate in good faith, expeditiously, but have not settled the definitive agreements prior to the [new closing date]?" [ECF No. 52-6]. Plaintiffs responded: "Although we can always extend, . . . I want the breakup fee to serve as the incentive to get this deal closed asap" [ECF No. 52-6]. On January 13, 2020, Plaintiffs responded to the same email exchange again, saying: "I sent this last email a week ago and am surprised I haven't heard from you. Has something changed?" [ECF No. 52-6]. Global did not respond. *See* Joint 56.1 ¶ 22.

There is no dispute that the parties did not "exchange drafts or negotiate terms for the Definitive Agreements as defined in the 2019 LOI." Joint 56.1 ¶ 24. Put another way, both sides agree that Global did not walk away from the transaction because the parties could not agree on the final terms of the Definitive Agreements. Instead, as Global stipulated in the parties' joint statement of undisputed material facts, "Global did not move forward with the Transaction because of the language proposed by [Plaintiffs] in the Modified Proposed [Amendment]" to the 2019 LOI agreement. Joint 56.1 ¶ 27.

In a letter dated February 3, 2020, Plaintiffs demanded that Global pay the $300,000 Breakup Fee, citing Sections 7 and 8 of the 2019 LOI agreement [ECF No. 52-9]. *See* Joint 56.1 ¶ 28. Plaintiffs explained that Section 7 of the 2019 LOI required Global to close by November 20, 2019, the parties had never executed an amendment to extend the closing date to January 31, 2020, and, in any event, both dates had passed without the transaction closing [ECF No. 52-9].

Plaintiffs argued that, since Global "simply stopped communicating," Plaintiffs had to conclude that Global was either "no longer willing or no longer able to complete the transaction," and "[n]either disinterest nor inability to close is a valid exception under Section 8 of the LOI," which requires Global to pay the Breakup Fee [ECF No. 52-9 at 2]. In a letter dated February 18, 2020, Global rejected Plaintiffs' demand, stating that "the results of its due diligence investigation . . . proved unsatisfactory" [ECF No. 52-10].

### B. Procedural History

Plaintiffs initiated this action by filing a complaint, which asserts two counts of breach of contract [ECF No. 1 ("Cmpl.")]. In Count One, the Complaint alleges that Global breached the 2019 LOI agreement by failing to pay the Breakup Fee. Cmpl. ¶ 32; *see id*. ¶¶ 25–34. Count One specifically alleges that the 2019 LOI agreement required Global to pay the Breakup Fee because: the "sale did not close by the closing date set forth in the 2019 LOI," which was November 20, 2019; Global "did not provide written notice that it was terminating the agreement as the result of its due diligence as required by Section [3] of the 2019 LOI"; and Global did not walk away because of issues with "final" terms for the contemplated purchase. Cmpl. ¶¶ 28–31. Count Two of the Complaint asserts a claim "***In the Alternative***" for breach of contract based on Global's failure to close by the new (January 31, 2020) closing date contained in Global's Proposed Amendment and Plaintiffs' Modified Proposed Amendment. Cmpl. at 6 (emphasis in original). For each breach of contract claim, Plaintiffs allege, "[a]lternatively," that Global "breached the inherent obligation of good faith and fair dealing by attempting to cite due diligence concerns" as a pretextual "basis for the sale not closing." Cmpl. ¶¶ 33, 43.

Global answered [ECF No. 8], and the parties conducted discovery. After they completed discovery, the parties filed a joint letter requesting leave to file cross-motions for summary

judgment [ECF No. 48 ("Joint Letter")].  It states: "The parties are in agreement that this matter should be resolved by summary judgment as it does not appear that material issues of fact are in dispute.  Rather, the question for the Court appears to be how the at-issue contract operates based on those facts" [ECF No. 48 ("Joint Letter") at 1].  The Court set a briefing schedule for the parties' contemplated cross-motions [ECF No. 49].

The parties jointly submitted a mutually agreed-upon statement of undisputed material facts, along with, *inter alia*, copies of the 2019 LOI agreement, Global's Proposed Amendment, Plaintiffs' Modified Proposed Amendment, and the communications between the parties quoted above [ECF No. 52].  Plaintiffs filed a motion for summary judgment and supporting brief [ECF Nos. 55, 56 ("Pl. MSJ")].  In their moving brief, Plaintiffs argue that they are entitled to judgment on their claim that Global breached the 2019 LOI agreement by failing to pay the Breakup Fee.  *See* Pl. MSJ at 2, 9.

Global simultaneously filed its motion for summary judgment and supporting brief [ECF Nos. 53, 54 ("Def. MSJ")].  In its moving brief, Global argues that Plaintiffs' "claims should be dismissed because there was no meeting of the minds" with respect to Global's Proposed Amendment and Plaintiffs' Modified Proposed Amendment.  Def. MSJ at 5 (emphasis omitted).  After stipulating that Global "entered into" the 2019 LOI agreement and, later, "emailed a *proposed* amendment to [Plaintiffs] *modifying the 2019 LOI* (the 'Proposed Amendment')," Global ignores the existence of the 2019 LOI agreement, including the Section 8 Breakup Fee.  Def. MSJ at 2 (emphasis added).  Global devotes its moving brief entirely to arguing that Plaintiffs responded to the Proposed Amendment with a rejection and counter-offer, since the Modified Proposed Amendment proposed a material change, and that Global never accepted the Modified Proposed Amendment.  Def. MSJ at 6–7.  Global contends that it is entitled to judgment because "the only

source for payment of the Breakup Fee was the Modified Proposed [Amendment]," to which Global never agreed.  Def. MSJ at 8.

Both sides filed opposition briefs [ECF No. 57 ("Pl. Opp."); ECF No. 61 ("Def. Opp.")]. In their opposition, Plaintiffs point out that Global's moving brief ignores Plaintiffs' "chief" claim for breach of the 2019 LOI agreement, "which provides for the $300,000 Breakup Fee."  Pl. Opp. at 1, 2.  Plaintiffs further represent that they "do not on this record dispute Global's position" that there was no meeting of the minds with respect to the Proposed Amendment and Modified Proposed Amendment and, therefore, Plaintiffs "withdraw [their] alternative cause of action" for breach involving those documents. Pl. Opp. at 2.  In its opposition, Global insists that there "was [no] contract in place that would have provided for payment of the Breakup Fee."  Def. Opp. at 1. Global asserts that "the 2019 LOI was no longer effective," although Global does not explain when and why the 2019 LOI agreement ceased to be effective.  Def. Opp. at 6.  Global also asserts for the first time that disputes of fact, including "which side 'broke off negotiations,'" preclude granting summary judgment for Plaintiffs.  Def. Opp. at 1, 5–6.  Both sides waived the opportunity to file a reply brief [ECF Nos. 48, 49].

## II.     LEGAL STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a court must grant a motion for summary judgment if the movant shows that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005).  The Court must view all facts and draw all reasonable inferences in the light most favorable to the non-moving party.  *Int'l Multifoods Corp. v. Com. Union Ins. Co.*, 309 F.3d 76, 82 (2d Cir. 2002).  But "[c]onclusory allegations, conjecture, and speculation" do not raise a genuine dispute.  *Hayes v. Dahlke*, 976 F.3d 259, 267 (2d Cir. 2020)

(quoting *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998)).  In contract case, "if the court determines that 'the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms, and those terms may be the basis for summary judgment.'" *American Home Assur. Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 316 (2d Cir. 2006) (quoting *Dusé v. Int'l Bus. Machs. Corp.*, 252 F.3d 151, 158 (2d Cir. 2001)).

### III.  DISCUSSION

As noted above, both sides have represented that the material facts are not in dispute.  *See* Def. MSJ at 1; Pl. MSJ at 7; *see also* Joint Letter at 1; *see generally* Joint 56.1.[1]  Moreover, in their Joint Letter requesting leave to file cross-motions for summary judgment, the parties represented that the only "question for the Court" is "how the at-issue contract operates."  Joint Letter at 1. Consistent with this Joint Letter, Plaintiffs argue on summary judgment that the undisputed facts establish that Section 8 of the 2019 LOI agreement requires Global to pay the Breakup Fee, and Global breached by refusing to pay.  Pl. MSJ at 9–13; Pl. Opp. at 2.  However, in its briefs, Global asserts that "**there was no LOI in place** at all" that would require Global to pay.  Def. Opp. at 3 (emphasis in original).  As such, the initial question for the Court is whether the undisputed facts establish that there was a contract between the parties.

The Court has carefully reviewed the briefs, the parties' joint statement of undisputed material facts, the 2019 LOI agreement, Global's Proposed Amendment, Plaintiffs' Modified Proposed Amendment, the parties' communications, and all of the other documents submitted in connection with the parties' cross-motions for summary judgment.  The undisputed facts establish that the parties had a contract: the 2019 LOI agreement.  The language of the 2019 LOI agreement

---

[1] As noted above, Global asserts in its opposition brief that there might be a factual dispute over which side "broke off" negotiations, since Global's silence might have been a "negotiation tactic."  Def. Opp. at 1, 5–6.  However, in the parties' joint statement of undisputed material facts, Global stipulates that Global chose "not [to] move forward with the Transaction."  Joint 56.1 ¶ 27.

is clear and unambiguous, and the undisputed facts establish that Global breached Section 8 of the 2019 LOI agreement, requiring Global to pay the Breakup Fee.

### A. The Undisputed Facts Establish that Global Is Bound by the 2019 LOI Agreement.

The undisputed facts establish that the parties had a contract: the 2019 LOI agreement. There is no dispute that, on September 20, 2019, Global "entered into a . . . letter of intent agreement" with Plaintiffs, the 2019 LOI agreement. Joint 56.1 ¶ 8; Def. MSJ at 2 (explaining that Global "entered into" the 2019 LOI agreement with Plaintiffs); *see* 2019 LOI. There is also no question that the 2019 LOI agreement was a contract that imposed certain binding obligations on the parties, although it also contemplated future negotiations over the final terms of the purchase. *See* Joint 56.1 ¶¶ 8, 9, 10, 13; 2019 LOI § 16.

In particular, the 2019 LOI agreement reflects that it imposes "binding obligations" with respect to Section 7, regarding the closing date, and Section 8, regarding the Breakup Fee. 2019 LOI § 16. New York law is clear that a "court will find and enforce a contract" where parties have agreed to certain "essential elements" and begun performance, "even though the parties have expressly left . . . other elements for future negotiation." *Mills v. Everest Reinsurance Co.*, 410 F. Supp. 2d 243, 251 (S.D.N.Y. 2006) (quoting *Metro–Goldwyn–Mayer, Inc. v. Scheider*, 75 Misc. 2d 418, 347 N.Y.S.2d 755, 761 (1972)). Furthermore, Global does not contend that the 2019 LOI agreement was not a contract. Def. Opp. at 4 (confirming that Global is "not . . . challenging the 2019 LOI as an unenforceable . . . 'agreement to agree'"). Rather, Global asserts, without authority or explanation, that the contract "was no longer effective." Def. Opp. at 6.

In arguing that "there was no LOI in place" that would require Global to pay a Breakup Fee, Def. Opp. at 3 (emphasis omitted), Global largely ignores the 2019 LOI agreement and instead focuses on the Proposed Amendment and Modified Proposed Amendment. *See* Def. MSJ at 6–7.

Confusingly, Global stipulates that its Proposed Amendment was a proposal for "modifying the 2019 LOI" agreement. Def. MSJ at 2. Yet Global insists that there was no contract in place because Plaintiffs responded to Global's Proposed Amendment with a rejection and counter-offer, the Modified Proposed Amendment, which Global never accepted. Def. MSJ at 6–8. The parties and the Court all agree that, although Plaintiffs purported to accept Global's Proposed Amendment, Joint 56.1 ¶ 18, Plaintiffs' Modified Proposed Amendment was a rejection and counter-offer. *See Krumme v. WestPoint Stevens Inc.*, 143 F.3d 71, 83 (2d Cir. 1998); *Commerce Funding Corp. v. Comprehensive Habilitation Servs., Inc.*, 2005 WL 447377, at *11 (S.D.N.Y. Feb. 24, 2005). And there is no dispute that Global never accepted Plaintiffs' counteroffer. *See* Joint 56.1 ¶¶ 19, 23. Indeed, Plaintiffs have withdrawn their claim involving the Proposed Amendment and Modified Proposed Amendment. Pl. Opp. at 2.

The parties and the Court are in complete accord that there was no meeting of the minds to modify the 2019 LOI agreement, but Global completely misunderstands the significance of this conclusion. The failure to reach an agreement to *modify* the 2019 LOI agreement did not vitiate the underlying contract. Rather, the parties remained bound by the 2019 LOI agreement, as it was originally written, without any modification. *See Commerce Funding Corp.*, 2005 WL 447377, at *14 (explaining that, since the original contract was not modified, "the parties were bound under the terms of the [original contract]"); *see also Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 228 (2d Cir. 2001) (explaining that parties do not surrender their rights under an original contract unless and until a modification is established); 6 Arthur Linton Corbin, Corbin on Contracts § 1293 (1962).

Global asserts, without authority, that the 2019 LOI agreement "was no longer effective," but Global never explains when or why the 2019 LOI agreement ceased to bind the parties. Def.

Opp. at 6.  Global asserts only that "while [the parties] did negotiate to extend its terms, the parties failed to reach a meeting of the minds."  Def. Opp. at 4.  Global has not pointed to any contract language, evidence, or caselaw that suggests the 2019 LOI agreement would simply cease to bind Global unless the parties reached an agreement to extend its terms.  On the contrary, the plain terms of the 2019 LOI agreement establish that the closing date in Section 7 is "binding" unless the parties agree "in writing" to a later closing date.  2019 LOI §§ 7, 16.  That did not happen.  Section 8 is similarly "binding" in all events.  2019 LOI § 16.  Global's conclusory assertion that the 2019 LOI ceased to be effective cannot raise a genuine dispute about whether the parties had a contract.  *See* Hayes, 976 F.3d at 267.  On the record before the Court, there is no dispute that Global is bound by the 2019 LOI agreement.

### B. The Undisputed Facts Establish that Global Breached Section 8 of the 2019.

The undisputed facts establish that Global breached the 2019 LOI agreement by refusing to pay the Breakup Fee.  Section 8 of the 2019 LOI agreement provides that Global "shall pay" Plaintiffs the Breakup Fee if Global "elects not to complete the transaction for any reason other than (i) the results of its due diligence investigation," or (ii) because the parties "are unable to agree to final terms" in the Definitive Agreements for the purchase.  2019 LOI § 8.  To elect to terminate the 2019 LOI based on the results of its due diligence investigation, Global was required to provide "written notice" to Plaintiffs "prior to" the Section 7 closing date of November 20, 2019.  *See* 2019 LOI § 3.  Global did not do so.

In a pre-litigation letter to Plaintiffs, Global asserted that "the results of its due diligence investigation . . . proved unsatisfactory" [ECF No. 52-10].  However, on summary judgment, Global has neither offered any evidence, nor even argued that Global followed the procedure to terminate the 2019 LOI agreement based on the results of its due diligence investigation, as set

forth in Section 3 of the 2019 LOI agreement.  On the contrary, both sides agree that "Global never communicated an election to terminate the 2019 LOI," whether based on the results of its due diligence, or for any other reason.  Joint 56.1 ¶ 12.

It is also undisputed that Global did not walk away based on the parties' inability to agree on the final terms of the Definitive Agreements.  Both sides agree that the parties did not even "exchange drafts or negotiate terms for the Definitive Agreements as defined in the 2019 LOI." Joint 56.1 ¶ 24.  Furthermore, in the parties' joint statement of undisputed material facts, Global stipulated that "Global did not move forward with the Transaction because of the language proposed by [Plaintiffs] in the Modified Proposed [Amendment]" to the 2019 LOI agreement. Joint 56.1 ¶ 27.

The unambiguous language of Section 8 requires Global to pay the Breakup Fee if it chooses not to go through with the purchase for "any reason" other than the results of its due diligence investigation or the inability of the parties to agree on the final terms in the Definitive Agreements.  2019 LOI § 8.  The undisputed facts establish that Global chose not to "move forward with the Transaction" for another reason.  *See* Joint 56.1 ¶ 27.  Accordingly, Global breached the 2019 LOI agreement when it refused to pay the Breakup Fee, and Plaintiffs are entitled to summary judgment on their claim for breach of the 2019 LOI agreement.  *See American Home Assur. Co.*, 446 F.3d at 316.

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs' motion for summary judgment [ECF No. 55] is GRANTED with respect to Count One of the Complaint, asserting a claim for breach of the 2019 LOI agreement. Plaintiffs have WITHDRAWN Count Two of the Complaint, asserting in the alternative a claim for breach of the Proposed Amendment and Modified Proposed Amendment. Defendant's motion for summary judgment [ECF No. 53] is DENIED. The Clerk of Court respectfully is requested to enter the attached judgment and to close this case.

**SO ORDERED.**

Date: September 14, 2022
   New York, NY

**MARY KAY VYSKOCIL**
United States District Judge